SANDFORD L. FREY (State Bar No. 117058)
STUART I. KOENIG (State Bar No. 102764)
CREIM MACIAS KOENIG & FREY LLP
633 W. Fifth Street, 51st Floor
Los Angeles, CA 90071
(213) 614-1944 Telephone
(213) 614-1961 Fax
sfrey@cmkllp.com
skoenig@cmkllp.com

[Proposed] Attorneys for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

[LOS ANGELES DIVISION]

In re

RE/MAX MARQUEE PARTNERS, INC.,

    Debtor and Debtor in Possession.

CASE NO.: 2:10-bk-15425-ER

Chapter 11

**NOTICE OF MOTION AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363; WAIVER OF THE 14 DAY STAY PERIOD PURSUANT TO BANKRUPTCY RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KELLI TODD AND DANIEL McCONAUGHY IN SUPPORT THEREOF**

DATE:   March 15, 2010
TIME:   11:00 a.m.
CTRM:  1568

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

**TO THE HONORABLE ERNEST ROBLES, THE OFFICE OF THE UNITED STATES TRUSTEE AND TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on March 15, 2010, at 11:00 a.m. before the Honorable Ernest Robles, in Ctrm 1568. of the United States Bankruptcy Court, located at 255 E. Temple Street, Los Angeles, California, Debtor and Debtor in Possession RE/MAX Marquee Partners, Inc. ("Debtor"), will move the Court for an order authorizing the sale of substantially all of the assets of the Debtor ("Assets") free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §363 as set forth below and more fully in the Asset Purchase Agreements (collectively referred to herein as the "Agreement"), copies of which is attached to the Motion and incorporated herein by reference, collectively, as **Exhibit "1"** and waiver of the fourteen (14) day stay provision of Federal Rules of Bankruptcy 6004(h). If you have been served with this Notice of Motion and Motion, but have not received a copy of the Memorandum of Points and Authorities, Declaration and Exhibits, and you would like copies, they may be obtained: (i) by contacting Kelli Nielsen, Creim Macias Koenig & Frey LLP; 633 W. Fifth Street, 51st Floor; Los Angeles, California 90071; Facsimile - (213)614-1961; Email address - knielsen@cmkllp.com.; or, (ii) from PACER the Court's online service at pacer.psc.uscourts.gov/.

**PLEASE TAKE FURTHER NOTICE** that **Overbids** will be entertained by a qualified bidder making a higher and better offer. Overbids will be taken only as follows:

1. Bidding on the Property:

Bids can only be made for all of the "Purchased Assets" as that term is defined in the Agreement and set forth in **Exhibits "A", "B" and "C"** of the Agreement and their attendant Schedules. The initial overbid for the Purchased Assets must be at least $235,000 ($25,000 in excess of the Purchaser's purchase price for the Purchased Assets). Thereafter, overbids must be in a minimum of $10,000 increments. Any bidder must be represented in Court, either in person or through an authorized representative;

///
///
///

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

2. <u>Bidders Deposit</u>.

No potential bidder will be allowed to bid on the Purchased Assets unless the bidder provides the full purchase price at the Sale Hearing in one or more cashier's checks[1], payable to "Creim Macias Koenig & Frey LLP", drawn on a bank located in the United States;

3. <u>Requirements of Overbids</u>

a. Any overbid to purchase all of the Debtor's rights, title and interest in the Purchased Assets shall contain no contingencies;

b. Any overbid must provide that there is no financing contingency;

c. Any overbid must contain an acknowledgement that the Debtor is not making any representations or warranties as to the Estate's rights, title and/or interests in the Purchased Assets and that the sale of the Purchased Assets is under the same terms and conditions as set forth in the Agreement;

4. <u>Confirmation of Bid</u>

At the conclusion of the hearing on the Motion to Sell, the Debtor shall confirm the highest and best offer to the Court for all of the Estate's rights, title and interest in the Purchased Assets, and shall proceed to consummate the sale of all of the Estate's rights, title and interest in the Purchased Assets and shall enter into a contract with the highest bidder (in the event it is not the Purchaser) containing the same terms and conditions as in the Agreement without further notice to creditors or hearing before this Court and;

5. <u>Event of Default by Successful Bidder</u>

In the event the bidder of the accepted bid fails to timely meet and perform all conditions and terms of the sale, the Debtor shall be authorized to accept the next highest bid. In said event, the Debtor shall proceed to consummate the sale of all of the Estate's rights, title and interest in the Purchased Assets in accordance with such offer without further notice to creditors or hearing before this Court.

---

[1] Such purchasers are advised to bring a series of cashier's checks representing the purchaser's intended incremental bids up to and including the highest amount the bidder intends to pay. The Debtor will refund to the Successful bidder any amount represented by such checks as are tendered to the Debtor that exceeds the actual successful bid.

3

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

6. <u>Winning/Backup Bidders.</u>

At the conclusion of the Sale Hearing, the Court shall identify the winning bidder and, in descending order of bid amount, the identities of the other bidders. At that time, bidders other than the winning bidder may elect to either receive the return of their good faith deposit or may elect to remain as backup bidders, in which event Debtors' counsel shall retain their deposit pending the closing of the sale of the Purchased Assets to the winning bidder or to any backup bidder. Non-winning bidders who do not elect to remain as backup bidders shall be entitled to the return of their good faith deposits not later than two business days following the conclusion of the sale. The Debtor shall return the deposits of the backup bidders within two business days of the Closing (unless the backup bidder has become the winning bidder).

Because of the unique nature of the assets that are being sold, no further marketing efforts will be undertaken by the Debtor. As set forth in the declaration of Kelli Todd, which is submitted in support herein, marketing efforts were undertaken before the Agreement was entered into and the Agreement represents the highest and best price the Debtor was able to generate for the Purchased Assets.

**PLEASE TAKE FURTHER NOTICE** that the Motion will be based upon the Notice of Motion, the Motion, Memorandum of Points and Authorities and the Declarations of Kelli Todd and Daniel McConaughy filed in support, and upon all documents on file with this Court, as well as all oral and documentary evidence which may be presented prior to or at the hearing on the Motion, and all matters of which the Court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that, in addition to the relief requested above, the Motion seeks an Order granting the following relief:

1. Authorizing the sale of the Purchased Assets to the Purchaser on the terms and conditions set forth in the Agreement, attached to the Motion as <u>**Exhibit "1"**</u>;

2. Finding that the Notice to Creditors and Parties-in-Interest relating to the within Motion was adequate;

/ / /

/ / /

4

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

3.  Finding that the Debtor and prospective purchaser acted in good faith in connection with the negotiation, execution, delivery and consummation of the sale of the Purchased Assets;

4.  Finding that such negotiations and transactions were conducted at arms length such that the Debtor and the prospective purchaser are each entitled to the protection afforded by 11 U.S.C. Section 363(m) with respect to all transactions contemplated under the Agreement and approved in such Court Order;

5.  Approving a breakup fee for the Purchaser in the amount of $20,000 in the event there is a successful overbid, or in an amount approved by this Court; and

6.  Granting such additional relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that this Motion is made pursuant to, among other applicable law, 11 U.S.C. §§ 363(b)(1), 363(f), 363(m) and 105; Federal Rules of Bankruptcy Procedure 2002(a)(2), 2002(c) 6004 and 9014; Local Rule of Bankruptcy Procedure ("LBR") 9013-1(a) and LRB 6004-1; and on the grounds that the sale of the Purchased Assets subject to the conditions described herein is in the best interests of the Debtor and the sale price is fair and reasonable. If requested pursuant to the Local Bankruptcy Rules, a copy of the "Notice of Sale of Property of the Estate" in proper format, shall be submitted to the Court's clerk for publication.

**PLEASE TAKE FURTHER NOTICE** that Notice of hearing on the Motion will be served upon all creditors and interested parties. This Motion has been served upon the secured creditors of the Debtor, those parties that have requested special notice, the United States Trustee, any known prospective bidders and those holding a lien of record against any of the Purchased Assets.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(a)(7) requires that a formal written response to the Motion be filed at least fourteen (14) days before the hearing on the Motion and served upon the moving parties and the Office of the United States Trustee.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(a)(11) the failure of any party to timely object to the Motion may be deemed to constitute consent to the relief sought therein.

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

**PLEASE TAKE FURTHER NOTICE** that this Motion requests that the order approving this Motion and sale shall not be subject to any applicable stay set forth in Federal Rules of Bankruptcy Procedure 6004 et. seq. and may be immediately entered, enforced and consummated.

Dated: February 25, 2010

CREIM MACIAS KOENIG & FREY LLP

By /s/ _____
STUART I. KOENIG
SANDFORD L. FREY
[Proposed] Attorneys for Debtor and Debtor in Possession, RE/MAX Marquee Partners, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

### A.  THE CHAPTER 11 BANKRUPTCY CASE AND JURISDICTION

On February 16, 2010 ("Petition Date"), the Debtor commenced its bankruptcy case by filing in this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of creditors holding unsecured claims has not yet been formed. The Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (D), (K) and (M).

### B.  THE DEBTOR'S BUSINESS

The Debtor is a corporation with its principal place of business in Manhattan Beach, California. The Debtor is a RE/MAX franchise, with offices throughout Los Angeles, California, operating as a real estate broker, primarily for the sale or lease of real property. The Debtor's day to day operations are currently run by its Chief Executive Officer and President Kelli Todd ("Todd"). At the current time, the Debtor has approximately 30 employees and approximately 230 real estate agents who operate as independent contractors.

The principal location is in Manhattan Beach, California. In addition to its Manhattan Beach location, the Debtor also has offices in:

West Los Angeles, California;

El Segundo, California;

Santa Monica, California;

Beverly Hills, California;

Venice/Marina del Rey, California

Subsequent to the entry of a final order approving the sale, the Debtor shall cease operating its business.

///

///

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

### C. EVENTS LEADING TO FILING OF CHAPTER 11 CASE

As with many Debtors, there were several precipitating causes to the Bankruptcy filing. During the previous decade, the Debtor's business had grown to multiple locations throughout Los Angeles and San Bernardino Counties. However, over the last several years, the downturn in the real estate market has had a devastating effect on the Debtor's business. Not only did it result in a dramatic slow down in the sale of real property, but the Debtor also sustained a loss of a number of its agents who left the real estate industry altogether. In addition, the Debtor saw its accounts receivable grow as its agents income declined. To further compound the impact of the decline in the real estate market, in June of 2005 the Debtor was named in a trademark infringement lawsuit filed in the Federal District Court here in the Central District. This lawsuit was then followed by a related action filed by the same plaintiff in the State Court against Debtor's current and former agents, and then a third action in Federal Court, also by the same plaintiff. Despite aggressive efforts by the Debtor to dismiss what it believes are frivolous cases, they continue on to this day, draining resources and hampering recruiting.

## II.

## THE TERMS OF THE PROPOSED SALE OF THE PURCHASED ASSETS

### A. THE PURCHASE PRICE

The Debtor proposes to sell all of the Debtor's rights, title and interest to those assets set out in Exhibit's "A", "B" and "C" to the Agreement and their attendant Schedules to Westhills Ventures, Inc., Surfside Ventures, Inc. and Beachside Ventures, Inc. (collectively referred to herein as "Purchaser"[2]) for the total sum of $210,000, to be paid in full at the Closing, as that term is defined in the Agreement, with the Closing to take place not earlier than the eleventh (11th) day and not later than the twenty-first (21st) day after the date of entry of a Final Order by the Bankruptcy Court approving the Agreement and the sale to the Purchaser.

///

///

---

[2] The Debtor is informed and believes that Westhills Ventures, Inc., Surfside Ventures, Inc. and Beachside Ventures, Inc. are all owed or subsidiaries of SNS Holdings, Inc. and have recently been formed for purposes of this transaction.

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

### B.    OVERBIDDING PROCEDURES

The Debtor hereby proposes and requests that this Court approve the following terms and conditions for the submission of any overbids to purchase all of the Debtor's rights, title and interest in the Purchased Assets at the hearing on this Motion:

1.    Bids can only be made for all of the "Purchased Assets" as that term is defined in the Agreement and set forth in Exhibits "A", "B" and "C" of the Agreement and their attendant Schedules. The initial overbid for the Purchased Assets must be at least $235,000 ($25,000 in excess of the Purchaser's purchase price for the Purchased Assets). Thereafter, overbids must be in a minimum of $10,000 increments. Any bidder must be represented in Court, either in person or through an authorized representative;

2.    No potential bidder will be allowed to bid on the Purchased Assets unless the bidder provides the full purchase price at the Sale Hearing in one or more cashier's checks[3], payable to "Creim Macias Koenig & Frey LLP", drawn on a bank located in the United States;

3.    Any overbid to purchase all of the Debtor's rights, title and interest in the Purchased Assets shall contain no contingencies;

4.    Any overbid must provide that there is no financing contingency;

5.    Any overbid must contain an acknowledgement that the Debtor is not making any representations or warranties as to the Estate's rights, title and/or interests in the Purchased Assets and that the sale of the Purchased Assets is under the same terms and conditions as set forth in the Agreement;

6.    At the conclusion of the hearing on the Motion to Sell, the Debtor shall confirm the highest and best offer to the Court for all of the Estate's rights, title and interest in the Purchased Assets, and shall proceed to consummate the sale of all of the Estate's rights, title and interest in the Purchased Assets and shall enter into a contract with the highest bidder (in the event it is not the

---

[3]    Such purchasers are advised to bring a series of cashier's checks representing the purchaser's intended incremental bids up to and including the highest amount the bidder intends to pay. The Debtor will refund to the Successful bidder any amount represented by such checks as are tendered to the Debtor that exceeds the actual successful bid.

9

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

Purchaser) containing the same terms and conditions as in the Agreement without further notice to creditors or hearing before this Court;

7.  In the event the bidder of the accepted bid fails to timely meet and perform all conditions and terms of the sale, the Debtor shall be authorized to accept the next highest bid. In said event, the Debtor shall proceed to consummate the sale of all of the Estate's rights, title and interest in the Purchased Assets in accordance with such offer without further notice to creditors or hearing before this Court; and

8.  At the conclusion of the Sale Hearing, the Court shall identify the winning bidder and, in descending order of bid amount, the identities of any other bidders. At that time, bidders other than the winning bidder may elect to either receive the return of their good faith deposit or may elect to remain as backup bidders, in which event Debtors' counsel shall retain their deposit pending the closing of the sale of the Purchased Assets to the winning bidder or to any backup bidder. Non-winning bidders who do not elect to remain as backup bidders shall be entitled to the return of their good faith deposits not later than two business days following the conclusion of the sale. The Debtor shall return the deposits of the backup bidders within two business days of the Closing (unless the backup bidder has become the winning bidder).

## C.   LIENS

The Debtor proposes to sell all of its rights, title and interest in the Purchased Assets free and clear of all liens, claims or encumbrances, undisputed, disputed or otherwise, with those liens and encumbrances to attach to the net proceeds of the sale.

## III.

## ARGUMENT

### A.   SECTION 363(B)(1) OF THE BANKRUPTCY CODE PERMITS THE DEBTOR TO SELL PROPERTY OF THE ESTATE OTHER THAN IN THE ORDINARY COURSE OF BUSINESS

Section 363(b)(1) of the Bankruptcy Code authorizes a Debtor to sell property of the estate. 11 U.S.C. §363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." The standard to be applied in determining whether a sale should be authorized under 11 U.S.C. §363(b)(1) is whether such sale is in

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

the best interests of the estate and the price is fair and reasonable. See, *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal.1985). The debtor (or trustee) is given substantial discretion in this regard. *Id.*

In those cases considering the question of whether to approve the sale of assets of the estate free and clear of liens consistently hold that the courts have broad discretion with respect to matters under Section 363(b). See, *Big Sharty Land Corporation v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985). Meeting this standard is dependent in part upon the terms of the sale and the benefit to the estate. As set forth in the Declaration of Daniel McConaughy, the price to be paid for the Purchased Assets is fair and reasonable. Accordingly, the sale of the Purchased Assets is in the best interests of the creditors and of this Estate.

### B. SECTION 363(F) OF THE BANKRUPTCY CODE PERMITS THE DEBTOR TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF THE CLAIMED LIENS THEREON.

It has long been recognized that the Bankruptcy Court has the power to authorize the sale of assets free and clear of liens and encumbrances. See, *Van Huffel v. Harkelrode*, 284 U.S. 225, 52 S.Ct. 115 (1931); see also, 3 *Collier on Bankruptcy (15th ed. 1998) ¶ 363.06, p.363-42, 44.* The standards which must be met for a sale free of liens are set forth in §363(f) and are in the disjunctive. Id. If any one of the requirements of §363(f) is met, then a sale free of liens should be permitted. 11 U.S.C. §363(f) provides as follows:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

In this case, the Debtor's secured creditor Comerica Bank ("Comerica") is believed to be the only creditor asserting a security interest in any of the Purchased Assets. The Debtor is informed and believes that Comerica asserts that it has a blanket lien over all of the Debtor's assets, including the Purchased Assets. The Debtor is further informed and believes that Comerica's alleged secured claim is approximately $400,000. The proposed sale of the Purchased Assets provides for a payment of $210,000. Assuming there are no overbids, and assuming that Comerica does in fact have an allowed claim in the amount of $400,000, and that claim is secured by, among other things, the Purchased Assets, the sales price is less than Comerica's lien. The Debtor is informed and believes that Comerica consents to the sale and therefore this Court is authorized to approve the sale free and clear of the liens of Comerica.

### C. THIS MOTION SHOULD BE APPROVED SINCE THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE AND OF THE CREDITORS

The Debtor is proposing to sell the Purchased Assets for $210,000 to the Purchaser, subject to overbid. The Debtor contends that the proposed sale is in the best interests of the Estate because no other party has expressed an interest in these assets and, based on the opinion of Daniel McConaughy, the price that the Debtor will receive for the Purchased Assets is fair and reasonable.

### D. FAIR, ACCURATE AND REASONABLE NOTICE HAS BEEN PROVIDED

"Regarding a proposed sale under Section 363 of the Bankruptcy Code, it has been stated the "four pieces of information must be presented to the interested parties. The notice should: place all parties on notice that the debtor is selling its business; disclose accurately the full terms of the sale; explain the effect of the sale as terminating the debtor's ability to continue in business; and explain why the proposed price is reasonable and why the sale is in the best interest of the estate." In re *Delaware & Hudson Railway Co.*, 124 B.R. 169, 180 (D. Del. 1991). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. In re *Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988). The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections. *Id.*

Pursuant to the entry of an order of the Bankruptcy Court shortening time for service, the Debtor served a noticed Motion setting forth its proposed sale of the Purchased Assets to the potential

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

purchasers (SNS Holdings, Inc., and its subsidiaries, Westhills Ventures, Inc., Surfside Ventures, Inc., and Beachside Ventures, Inc.) or to a successful overbidder, to all its creditors and other parties in interest.

The Debtor submits that the foregoing satisfies the requirements of Bankruptcy Rules 6004(a) and (c), which provides follows:

> (a)…Notice of a proposed…sale…of property not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k)…
>
> (c)…A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession…

Fed. R. Bankr. P. 6004(a)(c). The Debtor has complied with all of the noticing procedures required by the Bankruptcy Rules and the Court to ensure due process.

## IV.

## CONCLUSION

Based upon the foregoing, the Debtor requests that the Court approve the sale of all of the Estate's rights, title and interest and issue an Order Authorizing Sale of the Property pursuant to the terms of the Agreement, attached to the Declaration of Kelli Todd as **Exhibit "1"** authorizing the sale of the Purchased Assets free and clear of claims, liens, interest and encumbrances, and to grant such other relief as in appropriate.

Dated: February 25, 2010

CREIM MACIAS KOENIG & FREY LLP

By _____
STUART I. KOENIG
SANDFORD L. FREY
[Proposed] Attorneys for Debtor and Debtor in Possession, RE/MAX Marquee Partners, Inc.

## DECLARATION OF KELLI TODD

I, KELLI TODD, declare as follows:

1. I am the President and Chief Executive Officer ("C.E.O.") of RE/MAX Marquee Partners, Inc. ("RMP"). I submit this declaration in support of RMP's Motion to Sell Assets Free and Clear of Liens. If called to testify, I could and would testify competently concerning the contents of this Declaration. My knowledge of the facts set forth herein is based on my personal knowledge, my review of the company's books and records and on information which I learned from RMP's personnel in the course of assisting RMP's personnel and outside counsel prepare for the commencement of the within chapter 11 case.

2. RMP operates RE/MAX franchises in six (6) locations throughout Los Angeles County.

3. RMP is a corporation with its principal place of business in Manhattan Beach, California. RMP is a RE/MAX franchise, with offices throughout Los Angeles, California, operating as a real estate broker, primarily for the sale or lease of real property. I am responsible for RMP's day to day operations. As of the filing of the Bankruptcy Petition, RMP has approximately 30 employees and approximately 230 real estate agents who operate as independent contractors.

4. The principal location of RMP is in Manhattan Beach, California. In addition to its Manhattan Beach location, RMP also has offices in:

West Los Angeles, California;

El Segundo, California;

Santa Monica, California;

Beverly Hills, California;

Venice/Marina del Rey, California

5. I have read the attached Motion as well as each of the three (3) Asset Purchase Agreements (collectively referred to herein as "Agreement"), true and correct copies of which is attached hereto and incorporated herein, collectively by reference as **Exhibit "1"** and know the contents thereof. I participated in the negotiations of the Agreement and can attest to the fact that the sale to the Purchaser is an arms length transaction. There is no relationship between RMP and the

Purchaser, other than the fact that I am informed and believe that the Purchaser is an existing RE/MAX franchisee.

6. Prior to the filing of the Bankruptcy Petition I began negotiations with the Purchaser for the sale of RMP. During the time that RMP was in discussions with the Purchaser, I had contact with other interested parties regarding the sale of RMP. In addition to the Purchaser, I had discussions with approximately three (3) parties regarding the sale of RMP. Some of the discussions were more serious then others, but other than the Purchaser, I did not receive an offer from any other party for the purchase of RMP.

7. Subsequent to the receipt of a letter of intent from the Purchaser, and prior to the Petition Date, RMP engaged the services of Crowe Horwath ("Crowe"), for purposes of performing a valuation of RMP. Daniel McConaughy of Crowe was assigned the engagement and my staff and I met with Mr. McConaughy to assist in the preparation of a valuation of the assets of RMP.

8. Subject to Court approval, on behalf of RMP, I have entered into the Agreement for the sale of the Purchased Assets to the Purchaser for a purchase price of $210,000.00 ("Sale Amount"). Included within the Sale Amount is $10,000 for the cost of the valuation prepared by Crowe and so this sale will net $200,000. The Sale Amount is consistent with the value set forth in the report prepared by Crowe.

9. The contingency period for this proposed sale has expired, not including the requirement of Bankruptcy Court approval and the condition that the Purchaser be the successful buyer of Purchased Assets. I am informed and believe that there is no loan contingency and that the Purchaser is ready to perform upon the approval of the sale by the Bankruptcy Court.

10. Without limiting the express written terms of the Agreement, in summary, the Agreement provides that the Purchaser is purchasing the Purchased Assets free and clear of all claims, liens, interests and encumbrances and on an "as is, where is" basis.

11. Under the terms of the Agreement, the Purchaser acknowledges that the proposed sale is subject to Bankruptcy Court approval and overbids after notice to the United States Trustee, all Creditors and other parties-in-interest as required under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules. In the event that there is an overbid, the

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

1  Purchaser seeks a payment of $20,000 which the Purchaser contends represents its' out of pocket

2  expenses in completing its due diligence on this proposed sale. This payment of $20,000 is subject to

3  Bankruptcy Court approval.

4      12.    I believe sound business reasons exist to justify the proposed sale of the

5  Purchased Assets. If the proposed sale closes to the Purchaser, without any overbids, RMP will net

6  approximately $200,000, after deducting the "Due Diligence Fee" as that term is defined in the

7  Agreement, without regard to overbid.

8      13.    By this Motion I seek this Court's approval of the Agreement and request

9  authorization to execute any additional documents that may be necessary to consummate this sale

10  I declare under penalty of perjury, under the laws of the United States of America, that the

11  foregoing is true and correct.

12  Executed this 25 day of February, 2010, at Manhattan Beach, California.

_____
KELLI TODD

# DECLARATION OF DANIEL McCONAUGHY, PHD, ASA

I, DANIEL McCONAUGHY, declare as follows:

1.   I am a Director of Valuation Services for Crowe Horwath LLP ("Crowe"), and I submit this declaration in support of the motion of RE/MAX Marquee Partners ("RMP") for the sale of substantially all of the assets of RMP, a copy of which has been provided to me and which I have read. The matters set forth herein are based on my personal knowledge, unless otherwise indicated, and if called upon I could and would so testify.

2.   I am a Senior Accredited Appraiser (ASA) member of the American Society of Appraisers and I have a PhD in Finance. I also am a Full Professor of Finance at California State University Northridge. I have over 15 years of experience, as a Finance professor and in consulting on the valuation of businesses and business interests, derivative securities, economic damages, and intangible assets for bankruptcy, financial reporting, tax purposes, mergers and acquisitions, financial structuring, and litigation support services. I have publications in the areas of business valuation, cost of capital, capital structure, IPOs, mergers and acquisitions, illiquidity discounts, family business, executive compensation, and restricted securities under Rule 144. I have worked on numerous insolvency-related matters and have testified in Bankruptcy Court.

3.   Prior to the filing of its bankruptcy petition RMP engaged the services of Crowe to perform a valuation of its business in anticipation of a possible sale of substantially all of its assets. In the preparation of my valuation, I reviewed the books and records of RMP and met with its president and CEO, Kelli Todd and spoke with some of RMP's key employees.

4.   As part of my valuation, I conducted a valuation of the assets of RMP on a liquidation basis and it was on that basis that I completed my analysis of RMP's assets and arrived at a value for the assets. Based on my analysis of RMP's assets, it is my opinion that they have a liquidation value of approximately $200,000. I am advised that the proposed purchaser has agreed to pay $210,000 for the Purchased Assets and therefore, it is my opinion that the price the proposed purchaser has agreed to pay is reasonable and fair.

I:\sik\20122 (ReMax Marquee Partners)\Motion to Sell Assets.v4.doc

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on February 25, 2010, in Sherman Oaks, California.

_____
DANIEL L. McCONAUGHY, PHD, ASA

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944